**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Whitehead, | No. CV-23-02497-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Grand Canyon University, *et al.*, | |
| Defendants. | |

At issue is Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 45, MTD), to which Plaintiff filed an Amended Response (Doc. 59, Dismissal Response) and Defendants filed a Reply (Doc. 69, Dismissal Reply). Also at issue is Plaintiff's Motion for Leave to Amend Adding New Defendants (Doc. 51, Motion for Leave to Amend), to which Defendants filed a Response (Doc. 67, Amendment Response) and Plaintiff filed a Reply (Doc. 70, Amendment Reply). The Court finds these matters appropriate for resolution without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court grants Defendants' Motion to Dismiss and denies Plaintiff's Motion for Leave to Amend.

## I. Background

The facts of this case are rather opaque. In December 2022, Plaintiff was a student at Defendant Grand Canyon University ("GCU"), at which Defendant Araxi Hovhannessian was an instructor. (Doc. 42, Operative Complaint at 2.) Plaintiff alleges

that Instructor Hovhannessian "slandered plaintiff's good name . . . by writing that plaintiff and [a classmate named] Ms. Amaechi had something special going on (important discussion) in the academic environment of [an] online class." (*Id.* at 2.) Although this statement could be construed as vaguely romantic, Plaintiff clarifies that the remark referred only to "special academic communications" between Plaintiff and Ms. Amaechi. (*Id.* at 3.) As best the Court can glean from the pleadings, Plaintiff is averring that Instructor Hovhannessian simply stated that Plaintiff and Ms. Amaechi were carrying on a discussion related to their classwork. Plaintiff provides no additional context regarding Instructor Hovhannessian's utterance, but he does allege that it caused Ms. Amaechi to reduce her scholastic collaboration with Plaintiff. (*Id.*) Without elaboration, Plaintiff claims that Instructor Hovhannessian's statement was improper, slanderous, defamatory, biased, fear-inducing, and malicious. (*Id.*)

Plaintiff also alleges that GCU and two "unnamed" instructors, whom Plaintiff promptly names as Instructors Hester and Tennial, discriminated against Plaintiff on the basis of age and race by denying him the opportunity to write a dissertation on critical race theory while permitting other students to do so. (*Id.* at 4.) Plaintiff is "Afro American" and 65 years old. (*Id.* at 4.) Plaintiff provides no further allegations to support his discrimination claim, other than that Instructor Tennial shouted that Plaintiff "can't save the world." (*Id.* at 5.) Plaintiff does not indicate the age of any student permitted to write on critical race theory, nor does he provide any details regarding what specific facets of critical race theory he or any of his classmates sought to address, nor does he assert any facts regarding his or his classmates' grades or general academic performance, nor does he proffer any explanation as to whether he was an otherwise qualified candidate to write a dissertation on critical race theory, nor does he allege any information about GCU's policies in advising students on their dissertations and providing feedback on their selected topics. Plaintiff does not even clearly allege the race of anybody involved in this case except his own. The closest he gets is saying that he "believes" that white students were permitted to dissert upon critical race theory and that such students were "possibly" all white. (*Id.* at 4–5.)

Plaintiff next alleges that one of his classmates, Wendell Layne, "placed his disk in plaintiff's lap-top computer" without Plaintiff's consent and that this constituted "cyber theft." (*Id.* at 5–6.) Plaintiff apparently reported this incident to GCU but claims that GCU "obstructed justice by failing to notify law enforcement of the alleged cyber theft." (*Id.* at 5.) Plaintiff does not address whether he himself reported the purported theft to law enforcement or how GCU's inaction obstructed any resulting investigation.

Finally, Plaintiff avers that Instructor "Hovhannessian illegally taped a conference with plaintiff without his consent violating his privacy attempting to coverup [sic] her actions." (*Id.* at 11.) Plaintiff provides no further details regarding this allegedly tortious taping.

Plaintiff's Operative Complaint states claims for (1) slander (defamation of character), (2) age and race discrimination, (3) retaliation, (4) conspiracy, (5) cyber theft and invasion of privacy, (6) obstruction of justice, (7) negligence, (8) civil rights violations with intent to inflict emotional distress, (9) illegal taping, and (10) breach of implied and express contract. (*Id.* at 7–11.) Plaintiff requests $2 million in damages. Defendants have moved to dismiss all of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

After Defendants moved for dismissal, Plaintiff moved to amend his complaint in order to add new defendants. This is not Plaintiff's first attempt to amend his pleading. He has already filed a procedurally improper amended complaint (Doc. 9), which the Court struck, as well as three prior motions to amend (Doc. 19; Doc. 27; Doc. 30), which the Court effectively granted. Now Plaintiff seeks to add six additional defendants: (1) Instructor Bridgette Hester, (2) Instructor Derrick Tennial, (3) Michael Berger, (4) the Grand Canyon Police Department, (5) the Chandler Police Department, and (6) the "Crowne Plaza Resort Phoenix – Chandler Golf Resort." (Doc. 52, Lodged Amendment at 1.) Additionally, although not denominated as a *new* defendant in accord with LRCiv 15.1(a), Wendell Layne is named as a formal defendant for the first time. (*Compare* Operative Complaint at 1, *with* Lodged Amendment at 1.)

Plaintiff's proposed pleading does not allege anything materially new with respect to Instructor Hester, Instructor Tennial, or Mr. Layne, all of whom Plaintiff has already identified in his extant pleading. The most important new facts alleged in Plaintiff's proposed amendment are that, following the alleged cyber theft by Mr. Layne, "[t]he investigation by Defendants Grand Canyon Police Department, Chandler Police Department, and Crowne Plaza Resort Phoenix – Chandler Golf Resort were fraudulent." (Lodged Amendment at 9.) Plaintiff further alleges that "Crowne Plaza Resort hotel has photographic evidence of the occurrence and owed a duty to provide the information to the plaintiff and authorities resulting to negligence [sic]." (Lodged Amendment at 9.) Plaintiff does not allege any specific facts about Mr. Berger, other than that he generally "approved" the allegedly violative behavior of Instructors Hovhannessian, Hester, and Tennial. (*See* Lodged Amendment at 12.) Plaintiff's proposed pleading does not identify who Mr. Berger is or what his relation to this case is, but his Reply intimates that Mr. Berger is the Dean of GCU (Amendment Reply at 2, 4), whom Plaintiff named in his Operative Complaint simply as "Dean." (Operative Complaint at 10, 11.)

## II. Discussion

### A. Defendants' Motion to Dismiss

#### 1. Legal Standard

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

1    reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*
2    *Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility
3    standard is not akin to a 'probability requirement,' but it asks for more than a sheer
4    possibility that a defendant has acted unlawfully." *Id.*

5         "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed
6    factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief
7    requires more than labels and conclusions, and a formulaic recitation of the elements of a
8    cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up and citations omitted).
9    Legal conclusions couched as factual allegations are not entitled to the assumption of truth
10   and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*,
11   556 U.S. at 679–80.

12                    **2.       Analysis**

13        The Court will examine Plaintiff's ten claims in turn. The long and short of it,
14   however, is that each claim suffers from a fatal lack of factual support. Plaintiff's Operative
15   Complaint consists almost entirely of conclusory legal statements, and none of his ten
16   claims make the necessary crossing from "sheer possibility" into the realm of
17   "plausibility." *See Iqbal*, 556 U.S. at 678. Therefore, because no aspect of Plaintiff's
18   Operative Complaint rests upon the factual basis necessary to survive a 12(b)(6) motion,
19   the Court must dismiss Plaintiff's Operative Complaint in its entirety.

20                    **a.       Defamation**

21        In Arizona, a claim of slander falls within the tort of defamation. *Breeser v. Menta*
22   *Grp., Inc., NFP*, 934 F. Supp. 2d 1150, 1161 (D. Ariz. 2013). "One who publishes a false
23   and defamatory communication concerning a private person . . . is subject to liability, if,
24   but only if, [she] (a) knows that the statement is false and it defames the other, (b) acts in
25   reckless disregard of these matters, or (c) acts negligently in failing to ascertain them."
26   *Reynolds v. Reynolds*, 231 Ariz. 313, 317 ¶ 8 (Ct. App. 2013) (quoting *Dube v. Likins*, 216
27   Ariz. 406, 417 ¶ 35 (Ct. App. 2007)). "To be defamatory, a publication must be false and
28   must bring the defamed person into disrepute, contempt, or ridicule, or must impeach

plaintiff's honesty, integrity, virtue, or reputation." *Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 341 (1989).

"The court determines as a matter of law 'whether a communication is capable of bearing a particular meaning,' and, if so, 'whether that meaning is defamatory.'" *Id.* ¶ 9 (quoting Restatement (Second) of Torts § 614(1)). Only if the Court answers both of the preceding questions in the affirmative does the Court send the issue to a jury for determination of whether a defamatory meaning was actually conveyed to a recipient. *Id.*

> A statement is not defamatory unless it is capable of bearing a defamatory meaning. As a matter of law, a statement is not actionable if it cannot reasonably be interpreted as stating or implying facts susceptible of being proved true or false. Put simply, the plaintiff must show that the statement is provable as false before a defamation action can lie. Accordingly, [t]he key inquiry is whether the challenged expression, however labeled by [the] defendant, would reasonably appear to state or imply assertions of objective fact.
>
> In determining whether a statement is defamatory, the court must consider the impression created by the words used as well as the general tenor of the expression, from the point of view of a reasonable person at the time the statement was uttered and under the circumstances it was made. If a court determines that the publication is incapable of a defamatory meaning, the claim is subject to dismissal.

*BLK III, LLC v. Skelton*, 252 Ariz. 583, 588 ¶ 12 (Ct. App. 2022) (internal citations and quotation marks omitted).

Plaintiff's Operative Complaint does not even come close to stating an actionable claim for defamation. First, Instructor Hovhannessian's alleged statement is not a publication "stating or implying facts susceptible of being proved true or false." The assertion that Plaintiff and one of his classmates were engaged in an "important discussion" or "special academic communications," (Operative Complaint at 2–3), is not an "assertion[] of objective fact," *see BLK*, 252 Ariz. at 588 ¶ 12. Second, even if Instructor Hovhannessian's alleged utterance was a falsifiable, positive statement, it was incapable of bearing a defamatory meaning. The assertion that Plaintiff and his classmate were

having an "interesting discussion," (Operative Complaint at 7), could not bring Plaintiff into disrepute in the eyes of any reasonable person. In determining whether a statement can bear a defamatory meaning, courts should examine the context and surrounding circumstances of the statement, as well as the general tenor of the expression. However, Plaintiff has failed to include any such context in his Operative Complaint or his Response, (*see* Dismissal Response at 2–8). As a result, the Court has no choice but to view Instructor Hovhannessian's alleged utterance in a vacuum. Having done so, the Court concludes that Plaintiff has failed to state a claim of defamation upon which relief can be granted. Accordingly, the Court must dismiss Plaintiff's claim.

### b.   Age and Race Discrimination

Plaintiff claims that Defendants violated Title VI of the Civil Rights Act of 1964 by allowing other students to dissert upon the subject of critical race theory while denying Plaintiff the same opportunity. (Operative Complaint at 7.) The private right of action created by Title VI applies only to intentional discrimination. *Alexander v. Sandoval*, 532 U.S. 275, 293 (2001). The sufficiency of a discrimination claim is assessed according to the *McDonnell Douglas* test, under which the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Rashdan v. Geissberger*, 764 F.3d 1179, 1182 (9th Cir. 2014). In carrying his initial burden, a plaintiff may rely on direct or indirect evidence. *Id.* at 1183. In this case, Plaintiff offers no facts that would directly prove a discriminatory intent. Therefore, Plaintiff's claim depends upon the existence of sufficient facts permitting an indirect inference of discrimination. A crucial element of any claim positing an indirect allegation of discrimination is evidence meeting "a minimum threshold of identifying students who are similarly situated to" the plaintiff. *See id.*

Plaintiff has utterly failed to provide any factual allegations that would permit the Court to draw a reasonable inference of discrimination by Defendants. Plaintiff has not alleged the age of any of the students who were permitted to dissert upon critical race theory, not even on an approximate basis. And although Plaintiff has alleged the race of the students whom he contends were impermissibly favored over him, he has only done so

in a vague and equivocal manner. But regardless of the paucity of Plaintiff's allegations concerning race and age, his discrimination claim would fail in any event due to the complete absence of any allegation that Plaintiff and his classmates were similarly situated. Plaintiff offers no averments regarding his own qualifications to dissert upon critical race theory or the qualifications of his classmates. He has also failed to plead any information regarding the general process by which Defendants determine the acceptability of a dissertation topic. Because Plaintiff's claim includes no factual allegations concerning the core elements of his discrimination claim, Plaintiff has failed to state a claim for discrimination upon which relief can be granted. The Court will therefore dismiss the claim.

### c.   Retaliation

Plaintiff claims that "[b]ased on the above claims Defendants engaged in retaliation designed to obstruct plaintiff's academic pursuit of doctoral degree [sic], denying plaintiff the right to conduct his research on Critical Race Theory." (Operative Complaint at 8.) Although Plaintiff's Operative Complaint contains almost no description of what Plaintiff perceives the factual predicate of his retaliation claim to be, he states in his Response that "[t]he University instructors Tennial and Hester engaged in retaliation against plaintiff for him filing an appeal against the action of Defendant Hovhannessian." (Dismissal Response at 9.) Plaintiff provides no additional explanation as to how the allegedly discriminatory rejection of his dissertation topic relates to his appeal of the defamation accusation such that the former constitutes retaliation for the latter.

Plaintiff asserts his retaliation claim under Title VI. (Operative Complaint at 8.) As the Northern District of California recently held, however, it is unclear whether Title VI supports a cause of action for retaliation. *Paschal v. City & County of San Fransisco*, No. 22-CV-03604-WHO, 2023 WL 1927738, at *7 (N.D. Cal. Feb. 10, 2023). In the absence of a specific judicial standard applicable to Plaintiff's claim, the Court looks to generalized pleading standards for retaliation claims. Under the jurisprudence of Title VII and of Arizona law, "[t]he plaintiff must first establish a prima facie case of retaliation by showing

that (1) he or she engaged in activity protected under the statute, (2) the employer imposed an adverse employment action, and (3) there was a causal connection between the two actions." *Najar v. State*, 198 Ariz. 345, 347–48 ¶ 8 (Ct. App. 2000).

Plaintiff has failed to plead any facts permitting the Court to reasonably infer a causal connection between the rejection of his dissertation topic and his appeal of the defamation claim. As noted above, Plaintiff has submitted no allegations regarding his qualifications to dissert upon critical race theory, the qualifications of his classmates, or the overall process by which Defendants oversee the doctoral program. There is simply nothing in Plaintiff's Operative Complaint or responsive briefing indicating a retaliatory motive. Such *ipse dixit* legal conclusions are insufficient to withstand a motion to dismiss. Accordingly, the Court will dismiss Plaintiff's claim for retaliation.

### d.      Conspiracy

Plaintiff's claim for conspiracy is so devoid of facts as to preclude any meaningful analysis. He claims that "[b]ased on the above claims and information Plaintiff believes and assert [sic] that Defendants committed Conspiracy to violate plaintiff's civil rights harming plaintiff's government loan process and his ability to continue his doctoral education." (Operative Complaint at 8.) This claim constitutes nothing more than a formulaic incantation of a cause of action, which is insufficient to overcome a motion to dismiss. The Court will dismiss Plaintiff's claim for conspiracy.

### e.      Theft and Invasion of Privacy

Plaintiff claims that Defendants committed "cyber theft" and "invasion of privacy" by virtue of non-party Wendell Layne's alleged interference with Plaintiff's computer. (Operative Complaint at 9.) Even assuming *arguendo* that Mr. Layne committed a tort, Plaintiff's claims against Defendants fail. Arizona generally follows the Restatement (Second) of Torts. *See Reynolds*, 231 Ariz. at 317–18 ¶¶ 8–14. The Restatement provides:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>> (a) orders or induces the conduct, if he knows or should know of circumstances that would make the conduct tortious if it were his own,

or

(b) conducts an activity with the aid of the other and is negligent in employing him, or

(c) permits the other to act upon his premises or with his instrumentalities, knowing or having reason to know that the other is acting or will act tortiously, or

(d) controls, or has a duty to use care to control, the conduct of the other, who is likely to do harm if not controlled, and fails to exercise care in the control, or

(e) has a duty to provide protection for, or to have care used for the protection of, third persons or their property and confides the performance of the duty to the other, who causes or fails to avert the harm by failing to perform the duty.

Restatement (Second) of Torts § 877. Plaintiff has adduced no facts indicating that Defendants ordered or induced Mr. Kayne's alleged tort or possessed any knowledge that Mr. Layne might act tortiously on Defendants' premises. Plaintiff has therefore failed to state a cognizable claim against Defendants for theft or invasion of privacy. Accordingly, the Court will dismiss Plaintiff's claim.

### f.   Obstruction of Justice

Plaintiff pleads a civil claim against Defendants for "obstruction of justice." (Operative Complaint at 9.) In Arizona, obstruction of justice is a purely criminal offense, not a civil tort. *Liberti v. City of Scottsdale*, No. 1 CA-CV 22-0599, 2023 WL 4078539, at *2–3 ¶¶ 12–16 (Ariz. Ct. App. June 20, 2023). Accordingly, the Court will dismiss Plaintiff's claim for obstruction of justice.

### g.   Negligence

Plaintiff claims that Defendants were "negligent relating to denying plaintiff the right to write on CRT and failing to notify authorities of the cyber theft." Plaintiff identifies no law or facts, and the Court is aware of none, giving rise to a legal duty borne by Defendants to permit Plaintiff to write a dissertation on critical race theory. And the Court is similarly unaware of any duty that Defendants bore to notify the authorities of the alleged cyber theft. Even assuming *arguendo* that Defendants knew about Mr. Layne's alleged cyber theft (for which assumption there is no evidence whatsoever), "[t]he fact that the

actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action." *See* Restatement (Second) of Torts § 314. Accordingly, the Court will dismiss Plaintiff's claim for negligence.

### h.    Civil Rights Violations with Intent to Inflict Emotional Distress

Plaintiff's eighth claim is a vague recapitulation of his claims for discrimination and retaliation, adding that Defendants acted with intent to inflict emotional distress. (Operative Complaint at 10.) The Court has already rejected Plaintiff's claims for discrimination and retaliation as resting upon insufficient factual support. The additional assertion that Defendants acted with intent to inflict emotional distress makes this claim even less viable. A claim for intentional infliction of emotional distress requires a showing of "extreme and outrageous conduct." *Watkins v. Arpaio*, 239 Ariz. 168, 170 ¶ 8 (Ct. App. 2016). Plaintiff's Operative Complaint does not allege any conduct that is even objectionable, much less extreme or outrageous. Accordingly, the Court will dismiss Plaintiff's claim.

### i.    Illegal Taping

Plaintiff claims that "Defendant Hovhannessian illegally taped a conference with Plaintiff without his consent violating his privacy attempting to coverup [sic] her actions. The violation (unauthorized taping) occurred in the States of Arizona and Louisiana." (Operative Complaint at 11.) That is the totality of the allegations supporting Plaintiff's claim for illegal taping. Plaintiff's averment is so lacking in detail that it does not provide notice of what Plaintiff's claim is about, much less state a claim upon which relief could be granted. The Court will therefore dismiss the claim.

### j.    Breach of Contract

Plaintiff's final claim is for breach of contract, both express and implied. However, Plaintiff neither attached a contract to his pleading nor described the relevant terms of the alleged contract. Plaintiff's only substantive allegation is that he "had good faith that the University would be fair when he signed contractual agreements with the University."

(Operative Complaint at 11.) Although the Court can only guess at the terms of these "contractual agreements," it will construe Plaintiff's claim as an assertion that Defendants breached the covenant of good faith and fair dealing that attaches to all contracts, regardless of their terms. *See Cavallo v. Phx. Health Plans, Inc.*, 254 Ariz. 99, 104 ¶ 17 (2022). However, in the absence of any specific allegations of bad faith or unfair dealing, Plaintiff's contractual claim is simply an alternative means of pleading his claims for discrimination and retaliation. Accordingly, the Court rejects this claim for the same reasons set forth above.

In sum, Plaintiff's Operative Complaint fails to state any claims upon which relief could be granted. The Court will therefore grant Defendants' Motion to Dismiss. The Court will next address whether Plaintiff should be granted leave to amend his pleading.

## B. Plaintiff's Motion for Leave to Amend

### 1. Legal Standard

A party may amend a pleading once as a matter of course within 21 days after serving it, or within 21 days of service of, *inter alia*, a Rule 12(b)(6) motion. Fed. R. Civ. P. 15(a). In all other circumstances, absent the opposing party's written consent, a party must seek leave to amend from the court. Fed. R. Civ. P. 15(a)(2). Although the decision to grant or deny a motion to amend is within the trial court's discretion, "Rule 15(a) declares that leave to amend shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted). "In exercising its discretion with regard to the amendment of pleadings, a court must be guided by the underlying purpose of Rule 15—to facilitate a decision on the merits rather than on the pleadings or technicalities." *Eldridge v. Block,* 832 F.2d 1132, 1135 (9th Cir. 1987) (citation and internal quotation marks omitted).

However, the policy in favor of allowing amendments is subject to limitations. After a defendant files a responsive pleading or a motion under Rule 12(b), (e), or (f), the propriety of leave to amend is determined by consideration of five factors: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the

plaintiff has previously amended the complaint." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). "[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is 'particularly broad.'" *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (quoting *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 879 (9th Cir. 1999)). In modifying Rule 15(a) to provide that "the right to amend once as a matter of course terminates 21 days after service of a motion under Rule 12(b)," the Rules Committee explained that the new provision was designed to "force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion." Fed. R. Civ. P. 15(a) advisory committee's note to 2009 amendment.

### 2.   Analysis

Here, several factors militate against granting leave to amend, both with respect to Plaintiff's proposed amendment and in general. First, the amended complaint that Plaintiff has lodged with the Court is futile. "Futility alone can justify the denial of a motion for leave to amend." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2003). "A proposed amended complaint is futile if it would be immediately subject to dismissal. Thus, the proper test to be applied when determining the legal sufficiency of a proposed amendment is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)." *Nordyke v. King*, 644 F.3d 776, 788 n.12 (9th Cir. 2011) (quotations and citations omitted), *aff'd on reh'g en banc on other grounds*, 681 F.3d 1041 (9th Cir. 2012).

As noted above, Plaintiff's proposed pleading names seven additional defendants, but it adds no new claims and pleads virtually no additional facts. With respect to Instructors Hester and Tennial in particular, the new complaint contains no supplementary substance and instead merely associates the two instructors with the same claims that they were already intimately bound up with as "unnamed" parties in Plaintiff's Operative Complaint. Similarly, with respect to Michael Berger, whom Plaintiff's Reply identifies as "Dean" of what the Court presumes to be Grand Canyon University, the proposed complaint alleges nothing materially different from what is already alleged in the Operative

Complaint, which names a "Dean" in several of its claims. (Operative Complaint at 10, 11.) Therefore, Plaintiff's proposed pleading is subject to dismissal for the same reasons that his Operative Complaint is subject to dismissal, at least insofar as potential defendants Hester, Tennial, and Berger are concerned.

With respect to potential defendants Grand Canyon Police Department and Chandler Police Department, the proposed complaint's sole allegation supporting its claims against them is that the investigation they conducted following the alleged cyber theft was "fraudulent" and "negligent." (Lodged Amendment at 9, 10.) Plaintiff does not support that accusation with any factual allegations. Plaintiff's claims against the two police departments are therefore so lacking in factual support as to be mere invocations of legalese. Such claims are subject to immediate dismissal and are thus futile.

Plaintiff's claims against the Crowne Plaza Resort fare no better. His proposed pleading asserts that the hotel was "fraudulent" and "negligent" because it failed to notify the authorities of the alleged cyber theft and failed to provide "photographic evidence of the occurrence" to Plaintiff and the authorities. (Lodged Amendment at 9, 10.) Plaintiff has identified no law and no facts that would permit the Court to conclude that the Crowne Plaza Resort was under an affirmative duty to call the police regarding an alleged theft or to turn over evidence of such theft prior to the issuance of a subpoena. As noted above, "[t]he fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action." *See* Restatement (Second) of Torts § 314.

The final defendant named in Plaintiff's proposed amendment is Mr. Layne, whom Plaintiff claims engaged in "cyber theft." However, despite bringing a claim for "theft," neither the Operative Complaint nor the proposed amendment alleges that Mr. Layne actually stole anything. Instead, Plaintiff claims in both pleadings that "plaintiff attempted to obtain information on his original subject matter research but could not due to unnamed student Wendell Layne acts [sic] on his computer involving cyber theft." (Operative Complaint at 6; Lodged Amendment at 6.) Later, in the paragraph addressing obstruction

of justice, Plaintiff states that his "computer had movie scripts (Screenplays) on its hard-drive. The screenplays on the Computer are extremely valuable." (Operative Complaint at 9; Lodged Amendment at 10.) However, Plaintiff never alleges that Mr. Layne stole or otherwise appropriated the screenplays.

Even if the Court were to construe Plaintiff's claim for theft as one for trespass to chattels, the claim would still fail. In Arizona, trespass to chattels can occur in the context of digital property and "electronic touching," *McAlister v. Loeb & Loeb, LLP*, No. 1 CA-CV 23-0212, 2024 WL 372214, at *7–8 (Ariz. Ct. App. Feb. 1, 2024), but the cause of action still requires, at the very least, a showing that the defendant intentionally intermeddled with the plaintiff's chattel. *Koepnick v. Sears Roebuck & Co.*, 158 Ariz. 322, 330–31 (Ct. App. 1988); Restatement (Second) of Torts § 217. In Plaintiff's proposed amendment, there is no evidence, and indeed not even an allegation, that Mr. Layne intended to interfere with Plaintiff's "original subject matter research" or his screenplays. But even if the Court were to further clean up the proposed pleading and assess his theft claim against Mr. Layne as a claim for simple negligence, the claim still fails for lack of factual specificity. The Complaint provides no information whatsoever concerning which files Plaintiff was allegedly unable to access, what form those files were in, where they were stored on Plaintiff's computer, how Plaintiff attempted to access those files, and, most importantly, why Plaintiff believes his purported inability to access those files has anything to do with Mr. Layne's placement of a "disk" in Plaintiff's computer. In short, there is not the slightest intimation of the element of causation. Moreover, whether Plaintiff intends to sue Mr. Layne for theft or instead some lesser offense, the proposed pleading is so light on details that it does not adequately describe what exactly Mr. Layne is supposed to defend against. "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Plaintiff's proposed amendment is therefore futile in its entirety. The Court will consequently deny Plaintiff's Motion for Leave to Amend. However, the Court still must

consider whether Plaintiff should be afforded an additional opportunity to file a new amended complaint following dismissal of his Operative Complaint. Although the particular amendment that Plaintiff seeks to file is futile, the Court cannot say that any conceivable amendment would be futile. Although some of Plaintiff's claims suffer from incurable legal defects, the majority of the claims fail for lack of factual support. With respect to the latter set of claims, it is at least imaginable that Plaintiff could adduce new facts that might render the claims plausible. Therefore, futility does not provide grounds for a general denial of leave to amend. *See Kroessler v. CVS Health Corp.*, 977 F.3d 803, 815 (9th Cir. 2020). However, three of the other four amendment factors militate strongly against permitting further amendment.

First, the Court has already allowed Plaintiff to amend his complaint in this case. In addition to filing a procedurally improper amended complaint as a matter of course, Plaintiff has also filed three prior motions for leave to amend his complaint, the last of which the Court granted. Although only one of Plaintiff's prior attempts to amend his complaint was successful, Plaintiff's numerous attempted amendments nonetheless contravene the purpose of Rule 15. None of Plaintiff's past amendments have ameliorated the shortcomings of their predecessors. For instance, none of Plaintiff's attempted amendments have redressed the factual paucity of his initial complaint, which Defendants expressly attacked in their first motion to dismiss. (Doc. 23.) The purpose of permitting amendment following a 12(b)(6) motion is so that the plaintiff can "meet the arguments in the motion," but Plaintiff has repeatedly demonstrated that he has no interest in, and likely no ability to, amend his complaint in a substantively productive manner. Accordingly, the Court finds that Plaintiff's amendment history weighs against permitting further amendment.

Second, further amendment would be prejudicial to Defendants. In addition to the four motions for leave to amend, Plaintiff has also filed in this case an "emergency" motion to recuse (Doc. 16), a "motion to unseal federal (FBI) investigation" (Doc. 44), two premature motions for partial summary judgment (Doc. 47; Doc. 60), two frivolous

motions for sanctions (Doc. 55; Doc. 77), and three motions for reconsideration (Doc. 19; Doc. 75; Doc. 76). Plaintiff has also filed an interlocutory appeal and a petition for writ of mandamus with the Ninth Circuit (Doc. 32; Doc. 68), both of which were disposed of summarily. (Doc.43; Doc. 74.) Plaintiff has appealed the denial of mandamus to the Supreme Court (Doc. 79), and his petition for a writ of certiorari remains pending. Plaintiff has also filed a large number of briefs in this case, many of which have been flagrantly improper. The Court has already stricken six of Plaintiff's filings. (Doc. 9; Doc. 47; Doc. 48; Doc. 49; Doc. 53; Doc. 71.) In its June 13 Order, the Court wrote:

> In conclusion, the Court notes that it has just addressed—and stricken or denied—another six motions filed by Plaintiff in this matter because they were all unsupported by fact or law, not permitted by the applicable rules, incomprehensible, unintelligible, or specious. These filings are in addition to the other approximately eight motions the Court has found Plaintiff to have filed without merit in this matter. And the Court observes that each of these motions have cost Defendants significant attorney time and commensurate funds to respond to, and has required this Court to divert its own scarce time and resources from its approximately 400 other pending matters to address them, only to conclude they were all ungrounded. The Court has treated Plaintiff's filings in this matter with the patience and permissiveness appropriate for unrepresented parties not legally trained, but once again observes that the motions at issue by and large have been utterly devoid of merit and justification. Should Plaintiff continue to engage in filings in this matter on a whim, lacking factual support and justification under the applicable rules or law, the Court will reconsider its prior denial of Defendants' request for a vexatious litigant Order or other appropriate sanctions, as well as any conclusions about Plaintiff's purpose in filing and maintaining this action.

(Doc. 66 at 3.) Since issuing that Order, the Court has struck two more of Plaintiff's filings, denied two of Plaintiff's motions for reconsideration, and denied one of Plaintiff's motions for sanctions. Defendants have already been prejudiced by Plaintiff's incessant filings regarding frivolous matters. Affording Plaintiff yet another opportunity to amend his Complaint would only work further prejudice upon Defendants. The prejudice factor therefore weighs strongly against permitting further amendment.

Third, Plaintiff's most recent attempt to amend his complaint is marked by undue delay. There is nothing in Plaintiff's proposed pleading that he could not have pled in his original complaint or his various attempted amendments. The events that form the basis of Plaintiff's proposed amendment all occurred months prior to Plaintiff's initiation of this lawsuit on December 1, 2023. Although the Court assigns little weight to this factor, the history of delay increases the Court's hesitation to permit Plaintiff to further amend his complaint.

Fourth and finally, the Court concludes that Plaintiff is pursing this litigation in bad faith. In his Motion for Leave to Amend, Plaintiff represents to the Court that the basis of his motion is "new evidence." (Doc. 51 at 1.) However, the vast majority of Plaintiff's proposed amendment is unrelated to any new evidence. His claims against Instructor Hester, Instructor Tennial, Dean Berger, and Mr. Layne hinge upon exactly the same assertions that were present in his prior complaints. And his claims against the two police departments are not predicated on any evidentiary averments at all. The only "new evidence" in Plaintiff's proposed amendment is his allegation that the Crowne Plaza Resort committed fraud and negligence by not divulging certain photographic evidence. It would be absurd to pretend as if this piece of evidence by itself provides justification for Plaintiff's Motion for Leave to Amend. Given Plaintiff's history of frivolous filings in this case, the manifest absence of any rationale supporting his most recent attempt to amend his complaint, and the misleading invocation of "new evidence," the Court cannot avoid the conclusion that Plaintiff is acting with, at a minimum, reckless disregard for the resources of his opponents and of the Court.

This conclusion is buttressed by the innumerable determinations by other courts that Plaintiff is a vexatious litigant. Plaintiff has been subjected to prefiling injunctions by, at least, the District of Maryland, the District of D.C., the Eastern District of Virginia, the Central District of California, the Western District of Louisiana, and the Superior Court of D.C.[1] In an especially scalding reprimand predicated on unrebutted testimony that

---

[1] *Whitehead v. Viacom*, 233 F. Supp. 2d 715, 726 (D. Md. 2002), *aff'd*, 63 F. App'x 175 (4th Cir. 2003); *Whitehead v. Paramount Pictures Corp.*, 145 F. Supp. 2d 3, 3–6

Plaintiff's "self-proclaimed purpose for bringing his multiple copyright lawsuits is to extract nuisance settlements," Judge Friedman of the District of D.C. wrote:

> Lest it be inferred from such a dismal track record that Mr. Whitehead is but an unsophisticated naïf tilting at windmills, one need only look at his own stated intent for bringing many of these cases to know that Mr. Whitehead has no regard for our judicial system or the drain on its resources caused by his actions. Both this Court and the D.C. Circuit have separately found it necessary to impose sanctions and/or award attorneys' fees to defendants' counsel—at least in part as a deterrent to Mr. Whitehead's deplorable conduct.
>
> . . . .
>
> Plaintiff's most recent filings—which is as opaque, nonsensical and frivolous as those that preceded them—prove that neither adverse decisions, nor monetary sanctions, nor the award of attorneys' fees will deter him. This Court will tolerate Mr. Whitehead's egregious abuses of the judicial system no longer and will sanction him accordingly.

*Whitehead v. Paramount Pictures Corp.*, 145 F. Supp. 2d 3, 3–6 & n.1 (D.D.C. 2001), *aff'd*, No. 01-7062, 2001 WL 936260 (D.C. Cir. July 27, 2001) (internal citations omitted). Similarly, over a decade after Judge Friedman's rebuke, which itself was based on years of frivolous litigation history, the Firth Circuit wrote:

> In his myriad pleadings, Whitehead makes a variety of disjointed and conclusory allegations of copyright violations, judicial conflicts of interest, and a wide ranging conspiracy to retaliate against him for his claims. As the district court noted, Whitehead has raised similar claims in other courts, which have often been dismissed as frivolous and for which he has been sanctioned for his vexatious litigation. Whitehead's claims in the instant proceeding represent another attempt to raise the same frivolous and vexatious claims in a new forum.
>
> . . . .
>
> As he has done in other courts, Whitehead has inundated this court with multiple motions and filings that are largely incomprehensible or fanciful. In

(D.D.C. 2001), *aff'd*, No. 01-7062, 2001 WL 936260 (D.C. Cir. July 27, 2001); *Whitehead v. Paramount Pictures Corp.*, No. 1:08CV792(AJT/TRJ), 2009 WL 1491402, at *4 (E.D. Va. May 26, 2009), *aff'd in part*, 366 F. App'x 457 (4th Cir. 2010); *Whitehead v. Netflix, Inc.*, 830 F. App'x 967, 968 (9th Cir. 2020); *Whitehead v. White & Case*, LLP, No. 12-CV-0399, 2012 WL 1795151, at *4–5 (W.D. La. Apr. 19, 2012), *report and recommendation adopted*, No. 12-CV-0399, 2012 WL 1795148 (W.D. La. May 16, 2012); *Whitehead v. Wickham*, No. 05-CA-3346, 2005 WL 2874975, at *4–5 (D.C. Super. Ct. Sept. 6, 2005). The foregoing cases are only a sampling of the universal judicial disapproval that Plaintiff has incurred as a result of his lengthy campaign of vexatious litigation.

this appeal alone he has filed more than twenty motions, which have consumed countless hours of court personnel time and resulted thus far in five court orders and eight clerk orders.

*Whitehead v. White & Case, L.L.P.*, 519 F. App'x 330, 332 (5th Cir. 2013) (internal citation omitted).

Moreover, many of Plaintiff's previous lawsuits from other jurisdictions bear a striking resemblance to his claims in the case at bar. For instance, he previously brought suit in the Eastern District of Virginia against a smattering of defendants for, *inter alia*, race discrimination, retaliation, defamation, and breach of contract. Similarly, Plaintiff has brought frivolous lawsuits in the past concerning his "screenplay[s]." *See Whitehead v. CBS/Viacom, Inc.*, 315 F. Supp. 2d 1 (D.D.C. 2004); *Whitehead v. Sony Pictures*, No. CV 16-580 (SRN/BRT), 2016 WL 8732631 (D. Minn. Apr. 22, 2016). The Court is loath to permit Plaintiff to amend his complaint in order to subject a new set of defendants to yet another round of unhinged litigation predicated upon unsupported legal conclusions. Of course, if any of Plaintiff's filings had revealed a viable claim, the Court would not shut its doors and stopper its ears to his pleas for relief. However, the apparent unseriousness of the pleadings that Plaintiff has filed in the Court up to this point, combined with his decades-long history of frivolous and vexatious litigation, convinces the Court that Plaintiff is operating in bad faith.[2]

Thus, even absent general futility, the Court concludes that the presence of prior amendments, prejudice, undue delay, and bad faith caution against permitting further amendment. Accordingly, the Court exercises its "particularly broad" discretion in this case to deny future amendment and dismiss Plaintiff's complaint with prejudice.

**IT IS THEREFORE ORDERED** granting Defendants' Motion to Dismiss with prejudice. (Doc. 45.)

---

[2] The Court reviews Plaintiff's history as a litigant not for the purpose of imposing its own pre-filing injunction but instead merely to determine whether the bad-faith factor of the discretionary amendment analysis weighs against further amendment. Should Plaintiff continue to impose harassing filings upon Defendants in this case, the Court will reconsider Defendants' Motion to Declare Plaintiff a Vexatious Litigant (Doc. 24), which the Court previously dismissed without prejudice. (Doc. 41.)

**IT IS FURTHER ORDERED** denying Plaintiff's Motion for Leave to Amend. (Doc. 51.)

**IT IS FURTHER ORDERED** denying as moot Plaintiff's Motion to Amend Certificate of Service. (Doc. 50.)

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment in favor of Defendants and close this case.

Dated this 7th day of October, 2024.

Honorable John J. Tuchi
United States District Judge